IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

PAUL EUGENE LEDKINS                                                    PLAINTIFF

          v.                          Civil No.  16-3079

JAILER GUSTIN. Carroll County
Detention Center (CCDC); LIEUTENANT
CRIBBS, CCDC; and SERGEANT
MORRELL, CCDC                                                         DEFENDANTS


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff is

proceeding *pro se* and *in forma pauperis.*

The claims at issue in this case arose during Plaintiff's incarceration in the Carroll County

Detention Center (CCDC).  Plaintiff contends his constitutional rights were violated in the following

ways:  (1) he was subjected to cruel and unusual punishment from May 19, 2016, to May 23, 2016,[1]

when he was denied medical care and was forced to sleep in his own urine and stool for three days

before getting clean bedding; (2) he was denied medical care on June 7, 2016, when he fell on his

right side, was having trouble breathing, and believed he had broken or fractured his ribs; (3) he was

removed from his cell," his rights were taken away, and he was denied the ability to purchase "legal

stuff" from the jail store in retaliation for his filing grievances and submitting a § 1983 form; and (4)

he was denied lunch on June 6, 2016.  He alleges he suffered mental anguish, nightmares, loss of

---

[1]These dates are sometimes listed as being May 19th or May 20th to May 22nd or May
23rd.

-1-

sleep, and loss of weight.

Defendants have filed a summary judgment motion (Doc. 20).  A hearing was held on March 16, 2017, to allow Plaintiff to testify in response to the summary judgment motion.  At the conclusion of the hearing, the motion was taken under advisement pending preparation of this report and recommendation.

### 1.  Background

Plaintiff was booked into the CCDC on April 30, 2016.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A-1 at 4.  He remained incarcerated there until June 14, 2016.  *Id.* at 47.

On May 13, 2016, he was charged with delivery of a controlled substance, delivery of a controlled substance near certain facilities, and use of a communication device.  *Defts' Ex.* A-1. at 26-29.  On May 16, 2016, Sergeant Lemus completed an affidavit of probable cause for Plaintiff for allegedly trying to escape while he and ten other inmates were being escorted to court.  *Id.* at 30-31; *see also Defts' Ex.* A-3 at 3 (incident report).  A disciplinary charge was filed and on May 19th, Plaintiff was found guilty and sentenced to 50 days disciplinary segregation and 45 days loss of privileges.  *Defts' Ex.* A-3 at 5-6.

With respect to his bedding, Plaintiff testified that on May 19, 2016, just prior to midnight he soiled himself.  Immediately after the incident, Plaintiff testified he rinsed out his boxers and put them back on.

On May 20, 2016, at about 7:00 or 8:00 pm, Plaintiff stated he told Jailer Gustin that his bedding had urine and feces on it.  He indicated he asked Jailer Gustin for clean linens but was told it was not clean linen day.  This was the only time he talked to Jailer Gustin about the need for clean linens.  Plaintiff indicates his jump suit was also soiled.

On May 21, 2016, unidentified jailers came and took the dirty bedding and did not return

with anything.  Later that evening, the jailers took Plaintiff's jump suit.  Plaintiff was left with only his mattress which he testified was dirty.  The mattress had a rubberized covering.  Plaintiff testified that the covering was shredded and the mattress was soaked.  Plaintiff did flip it over.

The following day, Plaintiff was brought what he was told were clean linens.  However, Plaintiff testified it was actually the soiled bedding that was returned to him.  During this time period, Plaintiff indicated he asked all officers for clean bedding.  He testified he was told if he kept pushing the button he was going to be in trouble.  He indicates he could not eat or sleep under these conditions and suffered mentally.

On May 23, 2016, Lieutenant Cribbs investigated the situation and ordered the Plaintiff to be given clean bedding.  Several hours later, Plaintiff testified Lieutenant Cribbs moved an older gentlemen in the cell.  However, he said he could not live in that cell and was moved to another cell. Plaintiff was directed to clean the dirty cell.

During this time period, Plaintiff testified he was let out during recreation.  He indicated that grievances were submitted via an electronic kiosk.  Initially, Plaintiff testified he was not able to use the kiosk during this time period; however, when it was pointed out that he had submitted a grievance of May 20, 2016,[2] he testified that he did not mention the soiled linen at that time because his linens had been taken and he believed he was getting clean linens.  It was not until after dinner that he found out they had returned the same soiled linens to him.

Plaintiff's May 20th grievance asked why he was not allowed to email.  *Defts' Ex.* A-4 at 9. Lieutenant Cribbs responded "IT IS A PRIVILEGE NOT A RIGHT.  YOU ARE STILL ALLOWED REGULAR MAIL."  *Id.*  Plaintiff appealed.  Later that day, Sergeant Morrell denied his appeal

---

[2]Plaintiff was not consistent in his testimony as to what occurred on what specific date.

stating Plaintiff could use regular mail.  *Id.*

On May 20, 2016, Plaintiff also submitted a request asking that legal and personal mail be placed in his personal property up front.  *Defts' Ex.* A-5 at 11.  In reply, he was told the officers would pick it up and put it in his property box.  *Id.*  There is no mention of his bedding or the condition of his cell.

On May 20, 2016, he submitted a request asking if he was being singled out for punishment because he believed he was the only person not being allowed e-mail.  *Defts' Ex.* A-5 at 12.  He also asked if he could purchase cough drops.  *Id.*  Sergeant Morrell replied that no one on disciplinary restriction was allowed to use e-mail but could use regular mail.  *Id.*  Sergeant Morrell indicated Plaintiff could order cough drops.  *Id.*  There is no mention of his bedding or the condition of his cell.

On May 21, 2016, Plaintiff submitted a request asking if he would receive a refund on his account because he did not receive his E-cig on May 20, 2016.  *Defts' Ex.* A-5 at 13.  Lieutenant Cribbs replied the E-cig was in Plaintiff's property and he would receive it once he was released from disciplinary segregation.  *Id.*  There is no mention of his bedding or the condition of his cell.  In his deposition, Plaintiff said he had other inmates submitting grievances/requests for him.  *Defts' Ex.* B at 21.

On May 21, 2016, Plaintiff submitted a grievance stating that when he was released from prison in Missouri he had been on mental health medication.  *Defts' Ex.* A-4 at 10.  He stated he believed not being on the medication was resulting in anxiety attacks, depression, and paranoia.  *Id.* In response, Lieutenant Cribbs replied that the nurse was attempting to verify his medication with the Missouri prison.  *Id.*  Lieutenant Cribbs also indicated they would not accept this as an excuse for attempting to escape or other crimes or violations of jail rules.  *Id.*  There is no mention of his

bedding or the condition of his cell.

On May 21, 2016, Plaintiff submitted a medical request stating that he had been on medication in the Missouri and felt not being on medication was causing him to suffer anxiety attacks and paranoia. *Defts' Ex.* A-2 at 14. He also stated that he did not believe he was being given the right amount of food and was losing weight. *Id.* He indicated he accidentally urinated in his sleep and was refused clean sheets and a blanket on May 20, 2016. *Id.* He believed being placed back on Clonazepam would prevent anxiety attacks and clean bedding issues. *Id.* The nurse responded that she was talk to the doctor. *Id.*

On May 23, 2016, Plaintiff did submit a grievance about being denied clean bedding after he accidentally urinated on himself while sleeping. *Defts' Ex.* A-4 at 11-12. He said he went from midnight on May 20, 2016, until May 23, 2016, "after midnight having to sleep in my own urine while all officers was notified of this. and just laughed at the situation and left me to remain in sleeping in my own urine." *Id.* at 11. Plaintiff indicated he submitted this grievance himself by "jumping on" the kiosk when he was not being supervised. *Defts' Ex.* B at 27.

In response, he was told he was given a clean blanket and sheet on Sunday, May 22, 2016. *Id.* Plaintiff agreed; however, he stated that "from 5-19-16 till 5-22-16 I had to sleep in my own urine and stool." *Id.* Plaintiff's hearing and deposition testimony differed in that he said on May 22, 2016, the blanket and sheet he was given was the same dirty linen they had taken away. *Defts' Ex.* B at 25.

On May 23, 2016, Officer Young submitted an incident report. *Defts' Ex.* A-3 at 7-9. Officer Young indicated he and Officer Pepple were called to C-pod to investigate the situation with regard to Plaintiff's claim that he had soiled his sheet and blanket four days ago and had not received a new set. *Id.* They confirmed that Plaintiff did not have the sheet or blanket. *Id.* Plaintiff indicated an

-5-

officer had taken his blanket and sheet but he did not know the name of the officer.  *Id.* at 10.

Plaintiff was given a new sheet and blanket.  *Defts' Ex.* A-3 at 7-9.  Officer Young also noted that on May 20th, Plaintiff had a blanket and sheet but his blanket was in the corner with his mat because he wanted to turn them in and his sheet was draped over him on the ground.  *Id.*

Sheriff Randy Mayfield asserts that "[i]nmates are provided clean bedding on a regular basis and will be provided clean bedding should their bedding become damaged or soiled in such a way to make the bedding inappropriate for use."  *Defts' Ex.* A at ¶ 4.  If bedding "is soiled with urine or feces, the bedding should be replaced as soon as the problem is known."  *Id.*

On May 23, 2016, Plaintiff was taken to medical to review his weight and discuss his needs.  *Defts' Ex.* A-2 at 9.  His weight was recorded as 122.  *Id.* at 10.

On May 24, 2016, Lieutenant Cribbs ordered Plaintiff to receive clean stripes and any other bedding as needed.  *Defts' Ex.* A-6 at 2.  On May 24, 2016, Sergeant Morrell was performing the routine task of reviewing e-mails sent from, and to, inmates at the facility.  *Defts' Ex.* A-3 at 13.  She discovered another inmate Samuel Alburtis had sent e-mails on Plaintiff's behalf and that Plaintiff had sent e-mails using Alburtis's name.  *Id.*  Because he was on disciplinary confinement, Plaintiff was not allowed to e-mail.  *Id.*  She discovered Nicholas Hoffman, another inmate, made a call on Plaintiff's behalf and read a letter from him.  *Id.*  Inmates Alburtis, Hoffman, and Plaintiff were all charged with involvement in circumventing disciplinary or jail policy.  *Id.*  Plaintiff was found guilty.  *Id.* at 14.  In his deposition, Plaintiff admitted to using other inmates to send e-mail.  *Defts' Ex.* B at 29.

On May 27, 2016, Plaintiff submitted a grievance about his legal mail.  *Defts' Ex.* A-4 at 15.  He asked why it was not being sent out of the jail.  *Id.*  He said he had sent writs to the Berryville, Arkansas, courthouse and felt they would have been acknowledged if received.  *Id.*  In response, he

was told they did not hold properly marked and processed legal mail. *Id.* In fact, Plaintiff was told the jail even paid the postage if he was indigent. *Id.* Plaintiff appealed saying he felt his legal mail was being stolen by certain officers to prevent their illegal actions from being discovered. *Id.* Lieutenant Cribbs responded that Plaintiff's legal mail should be marked legal, sealed by him in the presence of the receiving officer, and then processed out with regular mail. *Id.* If Plaintiff had "any evidence that an officer [was] stealing your mail," Lieutenant Cribbs said he wanted to see it. *Id.* Lieutenant Cribbs said he had arrested more than one officer. *Id.*

Plaintiff responded there was no doubt his legal mail was being stolen by one of the jail officers. *Defts' Ex.* 4 at 18. He noted that his writs had been sent to the Carroll County Courts three weeks ago and still had not been received. *Id.* Lieutenant Cribbs stated he needed evidence such as dates, names of the officers that picked up the mail allegedly stolen, etc., to be able to perform an investigation. *Id.*

Plaintiff indicated he believed his legal mail began being stolen in May. *Defts' Ex.* A-4 at 17. Lieutenant Cribbs responded by listing the days legal mail was sent on Plaintiff's behalf and where it was sent. *Id.* Plaintiff was then asked what legal mail had been stolen. *Id.*

On May 27, 2016, Officer Gustin submitted a jail incident report that said:

> [I] DO RECALL INMATE LEDHINS ASKING FOR ANOTHER BLANKET AN A SHEET HE STATED HE WANTED HIS CLEANED I SAID WE DO NOT DO THAT AT THIS TIME AND INMATE LEDKING DID NOT SAY ANY THING TO ME ABOUT URINE BEING ON HIS BLANKET ALL I WAS TOLD WAS HE WANTED HIS CLEANED NOTHING WAS SAID AFTER THAT TIME.

*Defts' Ex.* A-3 at 9.

On May 28, 2016, Plaintiff submitted a request in which he complained that his legal mail was being stolen by the jailers. *Defts' Ex.* A-5 at 23. He stated he had "sent 3 writs of protection

orders to this court and not one [h]as been responded to." *Id.* Lieutenant Cribbs responded by asking

him to produce evidence of wrongdoing by any officer working at the Sheriff's Office. *Id.*

On May 30, 2016, Plaintiff said he had evidence that officers were bringing in illegal

contraband. *Defts' Ex.* A-5 at 24. He also said a sergeant told him to have his legal mail put in his

property and sign a release so his family could pick it up. *Id.*

On May 31, 2016, Plaintiff weight was 123. *Defts' Ex.* A-2 at 10, 18. On June 3, 2016,

Plaintiff submitted a medical request stating that he was so weak he could not move or walk. *Id.* at

19. He asked to be put on a double tray to regain his weight. *Id.*

On June 1, 2016, Plaintiff submitted a request about losing weight. *Defts' Ex.* A-5 at 25. He

said his body felt weak. *Id.* He indicated that he thought the doctor should put him on some type

of food order to regain weight. *Id.* The nurse responded that she was trying to get his records from

the Missouri prison. *Id.* She also noted she had been advised by the kitchen that not only was he

refusing the beans but that he was refusing to eat most of his other food too. *Id.* She said if he

refused to eat, he would continue to lose weight. *Id.*

On June 3, 2016, Plaintiff replied that he eats everything on the tray all three meals except

for the beans. *Defts' Ex.* A-5 at 29. He asked to be placed on double portion meals until he regained

his weight. *Id.* He noted he was so weak he could barely walk. *Id.* He asked to see the doctor and

asked for an extra blanket because he felt cold as a result of his loss of weight. *Id.* He felt this

qualified as a medical emergency. *Id.* The nurse responded that he would be weighed and the doctor

contacted. *Id.*

His weight was recorded as 131 on June 3, 2016. *Defts' Ex.* A-2 at 9-10. Dr. Bell felt that

Plaintiff was underweight and ordered him to receive double portions until his weight was 150. *Id.*

On June 6, 2016, Plaintiff was sleeping when lunch was passed out and missed the meal. Plaintiff testified he submitted a grievance via the electronic kiosk about the issue. Plaintiff testified he missed other meals because they kept moving him. *Defts' Ex.* B at 42. He indicated he was scared and nervous. While he was given the opportunity to eat, he did not do it. *Id.*

On June 7, 2016, Plaintiff testified he was let out of his cell to take a shower.[3] Plaintiff slipped and fell. He testified the pain was so bad that he could not breathe. The following day, Plaintiff testified he was seen by the nurse. He indicated the only thing she did was have him take deep breaths. He testified he was in pain for six months. When he was transferred to prison, Plaintiff stated he was told the problem was with his back and not his ribs.

On June 7, 2016, Plaintiff requested to be placed back in C-265 as he felt he was had been moved in retaliation for filing this complaint. *Defts' Ex.* A-4 at 19. He said he had lost 40 pounds, was not able to use the kiosk machine, was not receiving his hour out, and was not getting to see the doctor. *Id.* He said he fell in front of an officer and fractured his ribs. *Id.* He indicated he was given no help at the time. *Id.*

On June 8, 2016, Nathan Dresbenstedt noted that Plaintiff complained about his ribs, the upper right side just under the nipple line. *Defts' Ex.* A-6 at 2. Plaintiff reported that he fell and his side hit the cinder block bench in his cell a few days ago. *Id.* Dresbenstedt observed and palpated the area and found no bruising or crepitus. *Id.* On June 8, 2016, Plaintiff's weight was 134.

On June 13, 2016, Plaintiff submitted a medical request about receiving a tray full on beans which he was allergic to. *Defts' Ex.* A-2 at 28. He believed this act was taken in retaliation for his

---

[3]In his deposition, Plaintiff testified he injured his ribs on the same night he soiled himself. *Defts' Ex.* B at 13. He stated he fell out of his bunk and injured his side. *Id.* He said it was hurting so bad he could hardly breathe. *Id.* Plaintiff testified he was told that he would have to see the nurse there was nothing the officers could do. *Id.*

having filed this case.  *Id.*  That same day, Plaintiff submitted a grievance dealing with the same issue.  *Defts' Ex.* A-4 at 22.  On June 14, 2016, Plaintiff was transferred to the Arkansas Department of Correction.  *Defts' Ex.* A-1 at 47.

With respect to Lieutenant Cribbs, Plaintiff testified he talked to him on May 23, 2016. Plaintiff indicated he named him as a Defendant because he is one of the jail supervisors.  Plaintiff indicated Lieutenant Cribbs assured him everything would have be taken care of but it was not. *Defts' Ex.* B at 47.

With respect to Sergeant Morrell, Plaintiff testified she was named as a Defendant because she is a supervisor.  He also testified that it was his belief that she was the one who "pulled his letters" and refused to notarize his legal work.  *Defts' Ex.* B at 46-47.  Plaintiff stated he tried to talk to Sergeant Morrell during the incident but she did not respond.  *Id.* at 48.

With respect to the official capacity claim, Plaintiff thinks Defendants went against policy because he had unclean sheets, asked for help, and was refused.  *Defts' Ex.* B at 49.  He felt Defendants had personally caused his problems.  *Id.*

Plaintiff testified his mental damages are nightmares and fears of going home.  *Defts' Ex.* B at 43-44.  Plaintiff fears going home because he believes "they're going to set him up."  *Id.*

## 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving

party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants contend they are entitled to summary judgment because: (1) there is no evidence of personal involvement by Lieutenant Cribbs or Sergeant Morrell; (2) there were no constitutional violations; (3) they are entitled to qualified immunity; and (4) there is no basis for an official capacity claim.

### (A).  Cell Conditions

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(internal quotation marks and citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  See also Butler v. Fletcher, 465 F.3d 340, 345

(8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by both pretrial detainees and convicted inmates that prison officials failed to provide adequate food, clothing, shelter, etc.).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004)(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner."  Revels, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  Revels, 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, we turn to an examination of the conditions of confinement alleged to exist in this case.  Although Plaintiff provided conflicting testimony about the dates and times he spent with soiled bedding, for purposes of this motion, we will assume the facts in the light most favorable to the Plaintiff.  We will therefore assume that Plaintiff had soiled bedding from midnight on May 19th until shortly after 9:50 a.m. on May 23rd.  During this time, Plaintiff testified he rinsed out his boxers and was able to turn his mattress over to avoid the wet area.  During this

same period of time, Plaintiff either himself, or through other inmates, submitted five grievances which made no mention of his soiled bedding.  His first mention of soiled bedding appeared in a medical request which was responded to by the nurse.  It was not until May 23rd that he submitted a grievance/request to the Defendants.

In Smith v. Copeland, 87 F.3d 265 (8th Cir. 1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation."  *Id.* at  268.  The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste.  *Id.* at 269.  It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years."  *Id.*   The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis."  *Id.*  It stated that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.*  In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days."  Smith, 87 F.3d at 269.  Under the totality of the circumstances,  the court held the defendants entitled to judgment as a matter of law on the raw sewage claim.    *Id.*

In Whitnack v. Douglas County, 16 F.3d 954 (8th Cir. 1994), the inmates were in a cell where the "toilet was covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus."  *Id.* at 956.   In Whitnack, the Court held the conditions insufficient to state an Eighth Amendment claim.  However, the holding was "largely dependent on the very short

period of time during which the plaintiffs were confined in Cell C-18 before they were given full and adequate cleaning supplies. [T]he intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable." *Id.* at 958.  See also White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993)(relative brevity of the stay, eleven days, coupled with the fact that inmate would have been given cleaning supplies if he asked for them did not state an Eighth Amendment claim); Harris v. Fleming, 839 F.2d 1232, 1234-36 (7th Cir. 1988)(no Eighth Amendment claim where inmate contended he had no toilet paper for five days, no soap, toothbrush or toothpaste for ten days, and was kept in a filthy, roach infested cell).

Examining the totality of the circumstances, we do not believe Plaintiff has stated an Eighth Amendment claim.  A number of factors lead to this conclusion; the length of time was brief--at most 4 days; Plaintiff was able to rinse out his clothing; Plaintiff could only recall asking Defendant Gustin for clean clothing; Plaintiff either himself, or through other inmates, submitted multiple grievances during this time period not mentioning the fact that he had soiled himself and needed clean bedding; Plaintiff was able to use the other side of his mattress; and as soon as Lieutenant Cribbs learned of the incident he had it investigated and clean bedding provided to Plaintiff. Additionally, there is no showing that the conditions placed Plaintiff at a substantial risk of harm. Farmer, 511 U.S. at 837.  Having reached this conclusion, the Court notes that it does not condone subjecting any inmate to these conditions; rather, the Court merely finds the conditions do not state a claim under the Eighth Amendment.

### (B).  Denial of Medical Care

To prevail on a denial of medical care claim, the Plaintiff must show: (1) the existence of an objectively serious medical need, and (2) that Defendants knew of and deliberately disregarded that

need.  Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009).  Defendants' mental state must be akin

to criminal recklessness.  Id.  This standard is not met by the exercise of professional judgment in

refusing to implement an inmate's requested course of treatment.  Jolly v. Knudsen, 205 F.3d 1094,

1096 (8th Cir. 2000) (constitutional violation cannot rest on mere disagreement with treatment

decisions); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (inmates have no constitutional

right to particular course of treatment, and doctors are free to use their own medical judgment);

Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent

where they treated the prisoner and offered sensible medication).  Similarly, "[m]erely demonstrating

that a prison [nurse] committed medical malpractice is insufficient to establish deliberate

indifference."  Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted).  To

constitute deliberate indifference, "[a]n inmate must demonstrate that a prison [nurse's] actions were

so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  Id.

at 1066 (internal quotation marks and citation omitted).

　　　"Liability under section 1983 requires a causal link to, and direct responsibility for, the

deprivation of rights.  To establish personal liability of the supervisory defendant, [Plaintiff] must

allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his

constitutional rights."  Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting

Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)); Keeper v. King, 130 F.3d at 1314 (no

evidence that the defendants were doctors or were personally involved in making medical decisions

about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires

some personal involvement or responsibility).

　　　There are no allegations that the named Defendants were involved in anyway with the

decision of whether the Plaintiff should receive medical treatment, the type of medication he should be prescribed, or what tests should be ordered. Defendants are entitled to summary judgment on the individual capacity claims against them.

### (C). Denial of Meals

The Eighth Amendment requires inmates to be provided with "nutritionally adequate food." Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992). Failure to provide adequate nutrition can constitute deliberate indifference. Id.; see also Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007)(Deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees or convicted inmates with adequate food, clothing, shelter, medical care, and reasonable safety). "Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to an inmate." Schaub v. VonWald, 638 F.3d 905, 914-15 (8th Cir. 2011)(internal quotation marks and citations omitted).

> To prevail on an Eighth Amendment claim, an inmate must prove both an objective and a subjective element. First, the alleged deprivation, objectively, must be sufficiently serious; the prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities; or the prison official must incarcerate the inmate under conditions posing a substantial risk of serious harm. Second, the prison official, subjectively, must act with deliberate indifference to inmate health or safety.

Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998)(internal quotation marks and citations omitted).

No such showing can be made based on the undisputed facts in this case. Plaintiff testified

-16-

that he missed lunch on a single day because he was sleeping during meal time.  On one other

occasion, he sent his tray back because it had consisted of beans a food he testified he was allergic

to.  Finally, he testified he occasionally missed a meal because he was being moved from one cell

to a different cell; however, in those instances, he indicated he was usually offered a meal.

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner

the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th

Cir. 1998)(expressing doubt that Talib who missed about fifty meals in five months and lost fifteen

pounds met this threshold)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  "Whether the

deprivation of food falls below this threshold depends on the amount and duration of the

deprivation." Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986); see also Simmons v. Cook, 154

F.3d 805, 808 (8th Cir. 1998)(in thirty-two hour confinement inmates missed four consecutive meals

because their wheelchairs could not reach the food tray slot).  A few missed meals did not endanger

Plaintiff's health in anyway.   See Jaros v. Illinois Dept. of Correction, 684 F.3d 667 (7th Cir.

2012)(Occasional missed meal that did not endanger the inmate did not state a claim); Palmer v.

Johnson, 193 F.3d 346, 352 (5th Cir. 1999)("That [the inmate] may have missed one meal . . . does

not rise to the level of a cognizable constitutional injury").

With respect to Plaintiff's loss of weight, medical personnel were monitoring this and in fact

had ordered the Plaintiff to receive double portions until he regained weight.  No evidence was

introduced suggesting Defendants interfered in anyway with this medical order.  Defendants are

entitled to summary judgment on this claim.

**(D).  Retaliation**

In L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo., 673 F.3d 799, 807-08 (8th Cir. 2012)

-17-

the court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id*. (internal quotation marks and citations omitted).  "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).  The filing of a grievance and the filing of a lawsuit is protected First Amendment activity.  Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009).

Plaintiff testified he was retaliated against in the following ways because he submitted grievances and/or filed this case : (1) he was denied the right to purchase "legal stuff" from the jail store; (2) his legal mail was not being sent out; and (3) he was served a tray full of beans.  Plaintiff's claim fails because he has not alleged that any of the Defendants were personally involved in, or in some other way responsible for, the alleged retaliatory actions.  Plaintiff has not suggested Jailer Gustin was involved in any way in these actions.  As discussed in more detail above, Defendants Lieutenant Cribbs and Sergeant Morrell cannot be held liable merely because they occupy supervisory positions.  Defendants are entitled to summary judgment on this claim.

### (E).  Interference with Mail

"Inmates have a First Amendment right of free speech to send and receive mail.  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference

with mail correspondence." <u>Davis v. Norris</u>, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003). "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are (1)] reasonably related to legitimate penological interests,"such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. <u>See Thornburgh v. Abbott</u>, 490 U.S. 401, 413 (1989).

Plaintiff believes some mail he sent to the court in Berryville was intercepted or stolen. He bases this belief on the fact that he had not heard back from the Berryville court about certain writs he sent to the court. At the time, Plaintiff was represented by counsel.

This claim fails for several reasons. First, the claim fails because he does not contend that any of the named Defendants interfered with his mail. While he initially testified Sergeant Morrell pulled the letters, he then admitted he had no idea if she was involved personally but that she was in charge and the letters were missing. As discussed above, a Defendant cannot be held liable absent their personal involvement in an alleged constitutional deprivation. Second, the claim fails because Plaintiff has not shown that his legal position was prejudiced by the alleged interference with his legal mail. <u>See e.g., Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997)(claim fails without evidence of improper motive or resulting interference with inmate's right to counsel or access to

-19-

courts); see also Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993)(an inmate shows actual injury by establishing his position as a litigant was prejudiced due to the disputed acts). Defendants are therefore entitled to summary judgment on this claim.

### (F).  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity in their individual capacity.  See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### (G).  Official Capacity Claim

Finally, Defendants argue that Plaintiff has failed to point to any unconstitutional county policy or custom.  I agree.  An official capacity claim "is functionally equivalent to a suit against the employing governmental entity."  Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).  In other words, the official capacity claim is treated as a claim against Carroll County.  See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right."  Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted).  "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy."  Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted).  A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law."  Id.

-20-

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff makes no such showing. In fact, he testified that he believed the Defendants went against Carroll County policy. There is simply no basis on which Carroll County may be held liable.

### 4. Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 20) be **GRANTED** and the case **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of July 2017.


/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-21-